IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM JAMES WILSON III** | : |
| **Plaintiff,** | : |
| v. | : No. 2:25-cv-00455 |
| **C.V. STARR & CO.,** *et al.* | : No. 2:25-cv-02685 |
| **Defendants** | : |

## MEMORANDUM

### I.  Introduction

Before the Court are two motions to dismiss (the "Motion(s) to Dismiss") filed by C.V. Starr & Co., Inc. ("CV Starr"), Starr Insurance Holdings ("Starr Holdings") and Starr Surplus Lines Insurance Company ("Starr Surplus") in the consolidated cases listed above (Dkt. 455 at #6 and #Dkt. 2685 at #7) as well as a Motion to Remand (the "Motion to Remand" at Dkt. 2685 at #8) filed by Plaintiff William James Wilson, III ("Plaintiff").[1] This Court has considered all motions, as well as any oppositions or replies thereto and the oral argument this Court held on the Motions on July 22, 2025. For the reasons explained below, Plaintiff's Complaints are both dismissed without prejudice and Plaintiff's Motion to Remand is denied.

---

[1]  For the sake of clarity, throughout this opinion this Court will cite to documents on the respective dockets by way of the citation convention "Dkt. 455 at #__" or Dkt. 2685 at #____." The complaints in these cases will be referred to collectively as the "Complaints," with either one individually being referred to as a "Complaint."

1

II.   **Factual Background**

   a. **The Insurance Policy**

Plaintiff alleges that Pandora Marketing, LLC ("Pandora") is a business owned by a private trust, for which Plaintiff and his business partner Richard Barry Folk, Jr. ("Folk") are beneficiaries. (Dkt. 2685 at #1-1, ¶ 2).[2] The Complaint fails to allege with specificity what exactly this ownership structure means, but it appears Plaintiff and Folk founded Pandora and co-owned it until it was transferred to this trust. (*Id.* at ¶ 5). Pandora allegedly "specialize[d] in timeshare contract resolution." (*Id.*). In October 2020, Pandora purchased the liability insurance policy attached to both Complaints. (Dkt. 455 at #1-1, Ex. A, the "Contract" or "Policy").[3] The Policy covered only "claims that are first made against the Insureds during the Policy Period and reported in writing to the insurer pursuant to the terms herein." (*Id.* at Declarations,

---

[2]   For purposes of this omnibus opinion on motions to dismiss both Complaints, this Court relied solely on factual allegations (or the absence of factual allegations) found in *both* Complaints, granting Plaintiff all reasonable inferences. To the extent there were differences between the Complaints, this Court granted Plaintiff the "best of both worlds," and considered the Complaints to have whatever set of allegations was most beneficial to him. To avoid needless repetition, this Court will- on most occasions- provide factual citations to the Complaint docketed Dkt. #1-1 in case 2685. This is the more recent-in-time Complaint and effectively serves as Plaintiff's first amended complaint.

[3]   It appears that either Defendant inadvertently failed to attach the Complaint's exhibits when filing its notice of removal in Case 2685, or that Plaintiff's Court of Common Pleas complaint in what was removed as Case 2685 made reference to exhibits which were not actually attached to it below. At any rate, the Parties agree that the same Contract found at Dkt. 455 at #1-1 is at issue in both cases, and this Court is permitted to consider the undisputedly authentic copy of the Contract at issue in Case 2685 even if these cases were not consolidated on that basis. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

(capitalization altered)). The Policy Period ran from October 13, 2020 through October 13, 2021. (*Id.*).

By its own terms, the Policy only covers losses from a "Wrongful Act," which is defined as "any actual or alleged act, error or omission committed by the Insured in the course of rendering any or all of the Professional Services for others." (*Id.* at § 2(s)). "Professional Services," in turn means services "[s]olely in the performance of Timeshare Consulting Services for others for a fee." (*Id.* at § 2(q); *id.* at Declarations, Item 9). "Insured" in this context refers both to Pandora and "any person who is or was a director, officer, partner, member of a management committee or employee… of [Pandora], but solely in the capacity he or she is alleged to have rendered or failed to render Professional Service." (*Id.* at §§ 2(d), 2(h), 2(i)).

### b. Coverage Denial

In November 2020, Plaintiff was named as an individual defendant alongside Folk and Pandora in an action the Parties refer to as the "Bluegreen Lawsuit," which was filed in the Southern District of Florida and docketed as Case Number 1:20-cv-24681-RNS. (Dkt. 2685 at #1-1, ¶ 8). Plaintiff's allegations in the case at bar are that Defendants failed to pay for a defense and for liability incurred by Pandora with respect to the Bluegreen Lawsuit. (Dkt. 2685 at #1-1, ¶ 10). Plaintiff alleges that as a result of this failure, he incurred losses and reputational damage. (*Id.* at ¶ 13).

### c. The Bluegreen Lawsuit

The Complaint in the Bluegreen Lawsuit (the "Bluegreen Complaint") is against many parties alongside Pandora and Wilson.[4] The allegations of the Complaint deal with Plaintiff and Pandora's activities with relation to its customers' timeshare obligations.[5]

More specifically, the Bluegreen Complaint alleges that while Pandora advertised that they had a "process" for releasing timeshare owners from their agreements, Pandora's "process" was not legitimate. (Bluegreen Complaint at ¶¶ 1-2). Rather, this "process" merely facilitated a breach of contract by way of nonpayment, which resulted in the loss of ownership interests. (*Id.*) Bluegreen alleged that Pandora "sell[s] their illusory service to Bluegreen owners" and lead Bluegreen owners "to the conclusion that they can safely stop payments. . . ." (*Id.* at ¶ 3).

---

[4] The Bluegreen Complaint (*Bluegreen Vacations Unlimited v. Timeshare Lawyers, P.A. et al.,* 1:20-cv-24681-RNS (S.D.Fla., Nov. 13, 2020) at Dkt.1) largely refers to Pandora as Timeshare Compliance or "TSC," which the Bluegreen plaintiffs allege was the "DBA" under which Pandora was operating. The Bluegreen Complaint accordingly also refers to actions Plaintiff undertook on behalf of "TSC" rather than Pandora. This Court is not aware of any legal distinction between TSC and Pandora for purposes of these motions.

[5] Because the Bluegreen Complaint is central to the allegations of both Complaints before this Court and is a matter of public record, this Court may properly consider it at the motion to dismiss phase. *See:* Sturgeon *v. Pharmerica Corp.,* 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) (Rufe, J.) (noting that courts "take judicial notice of certain matters of public record on a motion to dismiss" and that such public records include court-filed documents.)

4

Allegedly, Pandora falsely claims that its clients will be serviced by an attorney, but the clients never meet with an attorney. (*Id.* at ¶¶ 27-28). Instead, the attorneys Pandora works with "are expected to do nothing more than lend their name and signature to a form letter sent to Bluegreen." (*Id.* at ¶ 32). According to the Bluegreen Complaint, at least one purported lawyer used by Pandora is not a licensed attorney, and the law firm to which work is referred is not an actual law firm. (*Id.* at ¶ 34). The Bluegreen Complaint alleges that this "fake lawyer" step is taken to cut off communication between Bluegreen and the timeshare owners, which in turn means that Pandora's customers no longer receive notifications that they are delinquent. (*Id.* at ¶ 36). The Bluegreen Complaint alleges that the so-called lawyers provide no further service after the initial letter. (*Id.* at ¶ 38). Instead, the intent of Pandora, according to Bluegreen, is to have the owners forfeit their interests in the timeshares by way of default and then mitigate the harm that causes by protecting the owner's credit. (*Id.* at ¶ 39).

To protect its customers' credit, Pandora would allegedly manipulate its customers' credit score by making false claims that those customers were victims of identity theft. (*Id.* at ¶ 44). This involved directing employees to file false police reports. (*Id.* at ¶¶ 45-46). On at least one occasion, a Pandora employee allegedly forged a customer's signature on a police report, using a photocopy of that customer's driver's license as a reference. (*Id.* at ¶ 51). The Bluegreen Complaint alleges that Pandora "[did] not disclose to the Bluegreen owners the consequences of ceasing payments, or that their 'cancellation' or 'exit' will actually result in an unlawful

5

breach of their timeshare contract due to non-payment, leading to a termination of their timeshare interests." (*Id.* at ¶ 54). Bluegreen alleges that after Pandora's customers unknowingly default on their timeshare agreements, Pandora tells them that Pandora succeeded in "cancelling" or "exiting" the contract. (*Id.* at ¶ 55). For that reason, the Bluegreen Complaint alleges that the Pandora's cancellation services are "illusory" and a "scam[]." (*Id.* at ¶ 57).

III. **Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) permits this Court to dismiss a count of a complaint if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks and citation omitted). The Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). But the Court cannot draw any *unreasonable* or unsupported inferences. *See, e.g.*: *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.,* 450 F.3d 130, 133 (3d Cir. 2006) ("[W]e need not credit the non-movant's conclusions of law or unreasonable factual inferences."); *Little v. Chambersburg Hosp.*, No. 1:11-CV-01804, 2012 WL 1048820, at *4 (M.D. Pa. Mar. 28, 2012) ("The deferential standard of review applicable to a motion to dismiss does not go so far as to require this Court to accept unsupported inferences drawn by the Plaintiff.").

A formulaic recitation of the elements of a claim will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks and citation omitted). Conclusory statements and unfounded speculation are insufficient to state a claim. *Parker v. Pennstar Bank, NBT,* 436 F. App'x 124, 127 (3d Cir. 2011).

This Court may exercise subject matter jurisdiction over claims based in state law when authorized to do so by Congress. One such instance is when the amount in controversy and diversity of citizenship requirements are met. The threshold inquiry requires the case's amount in controversy to exceed $75,000. 28 U.S.C. §1332(a). If that is satisfied, the Court must next look at the parties in the case. The Court has subject matter jurisdiction if, *inter alia*, the case is between citizens of different states. 28 U.S.C. §1332(a)(1). "To satisfy the jurisdictional requirements of 28 U.S.C. § 1332(a)(1), the federal diversity statute, diversity must be complete; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995). A corporation is a citizen of the state of its incorporation as well as the state in which its principal place of business is located. 28 U.S.C. § 1332(c)(1).

Courts in this Circuit generally grant leave to amend freely, when justice so requires. But a court may deny leave to amend a complaint if it finds "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *In re Burlington Coat Factory Sec.*

7

*Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted," under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* Courts have denied leave to amend when on notice that a plaintiff intends to pursue theories frequently asserted by those in the "sovereign citizen" movement. *See Prelle v. United States by Prelle,* No. 22-1453, 2022 WL 16958896, at *2 (3d Cir. Nov. 16, 2022); *Calloway v. Am. Express Nat'l Bank,* No. 24-CV-5332, 2024 WL 4596241, at *4 (E.D. Pa. Oct. 28, 2024) (Quiñones-Alejandro, J.); *Owens v. Walker*, No. CV 21-3761, 2023 WL 2646920, at *2 (E.D. Pa. Mar. 24, 2023) (Pappert, J.); *Savage v. Lederer*, No. 19-CV-1114, 2019 WL 1596335, at *2 (E.D. Pa. Apr. 12, 2019) (Quiñones-Alejandro, J.).

### IV. Analysis

#### a. Plaintiff's Motion to Remand in Case #2685 is baseless.

The Court first addresses the jurisdictional challenge brought by Plaintiff, in which Plaintiff seeks remand of Case Number 2685 back to the Philadelphia County Court of Common Pleas ("CCP"). In the relevant CCP Complaint, Plaintiff demands damages including more than $1 million in attorney's fees. (Dkt. 2685 at #1-1, ¶ 81). For that reason, the amount in controversy requirement is easily satisfied.

In that same CCP Complaint, Plaintiff alleges that he is a "private citizen" who is residing in Pennsylvania. (Dkt. 2685 at #1-1, ¶ 1). Plaintiff further alleges that Defendant Starr Holdings is a Nevada Corporation with a principal place of business in New York and that Defendant Starr Surplus is a Texas Corporation. (*Id.* at Caption, ¶ 4). Defendants brought before the Court a declaration of an executive for

8

Starr Holdings and Starr Surplus who declared under penalty of perjury that both companies have their principal place of business in New York. (Dkt. 2685 at #1-3, ¶4-5).

Throughout the briefing, Defendants have maintained they are of diverse citizenship from Plaintiff. Plaintiff has not called that into question. Because all Defendants in these matters are of diverse citizenship from Plaintiff, the complete diversity requirement is also met.[6] For that reason, jurisdiction is proper before this Court, and Plaintiff's Motion to Remand in Case 2685 is denied.[7]

> b. **Several of Plaintiff's causes of action must be dismissed for failing to state a claim because they rely upon statutes and regulations which do not provide for private causes of action.**

This Court next addresses Counts One through Six of both Complaints, which seem to find their bases in California, New York, and Pennsylvania insurance regulations or statutes. All of these counts must be dismissed to the extent they purport to find their basis in those cited provisions.

---

[6] The Court pauses briefly to note that because Case 2685 is only against Starr Holdings and Starr Surplus, the Motion to Remand does not implicate CV Starr's diversity. But for avoidance of doubt, CV Starr is pleaded in Case 455 to have its principal place of business in New York and sworn by an employee of CV Starr to be incorporated in Nevada. (*See* Dkt. 455 at #1-1, ¶ 5; Dkt. 455 at #1-1, Ex. G, ¶ 3).

[7] At oral argument, Plaintiff provided the Court with two thick packets of legally-meaningless paperwork that sounds in the baseless theories advanced by so-called "sovereign citizens." Those documents were subsequently placed under seal at Plaintiff's request. Some of that paperwork suggested that Plaintiff might recently have been a citizen of California. *See*, *e.g.*: Dkt. 455 at #24, p. 2 of 41. Were Plaintiff *presently* a citizen of California, this Court would likely be an improper venue for this matter. Plaintiff has pleaded himself to be a citizen of Pennsylvania. While there may be reasons to question the veracity of this claim, Defendants have not formally challenged that assertion and the Court will not do so *sua sponte* at this time.

The California citations are either to the California Uniform Insurance Practices Act ("California UIPA") or California Code of Regulations § 2695.7(b). Neither the California UIPA nor Section 2695.7(b) provides for a private cause of action. *See Zhang v. Superior Ct.*, 304 P.3d 163, 177 (Cal. 2013); *Abraham v. United Servs. Auto Ass'n,* No. 24-1182, 2025 WL 211970, at *7 (C.D. Cal. Jan. 6, 2025) (noting that claims under the California UIPA are barred); *Abraham v. United Servs. Auto. Ass'n*, No. EDCV 24-1182-KK-SPX, 2025 WL 211970, at *7 (C.D. Cal. Jan. 6, 2025) ("[T]here is no private right of action for violations… of the California Insurance Code or Section 2695.7 of the California Code of Regulation. . . .").

The New York citations are to New York Insurance Law § 2601(a)(2) and (a)(5). Section 2601 does not provide for a private cause of action. *Kantrowitz v. Allstate Indem. Co.*, 48 A.D.3d 753, 754 (NY App. Div. 2008).

The Pennsylvania citations are to Pennsylvania's Unfair Insurance Practices Act ("Pennsylvania UIPA") and to 31 Pennsylvania Code § 146.6. Neither the Pennsylvania UIPA nor Section 146.6 permits a private cause of action. *See Great W. Life Assurance Co. v. Levithan,* 834 F. Supp. 858, 863 (E.D. Pa. 1993) ("It is well settled…that the UIPA does not provide a private citizen with a cause of action against an insurer[]"); *Leboon v. Scottrade, Inc.,* 783 Fed. Appx. 129, 133-134 (3rd Cir. 2019) ("Finally, the Pennsylvania insurance regulation evidently invoked by LeBoon (see 31 Pa. Code § 146a.1) does not create private causes of action.").

Therefore, to the extent Counts One through Six of either Complaint finds its basis in the above-mentioned statutes and regulations, they are dismissed with prejudice.

### c. To the extent the Complaint Implicitly makes allegations of breach of contract, those claims are dismissed for failing to state a claim.[8]

#### i. Plaintiff's claims against CV Starr and Starr Holdings must be dismissed for lack of contractual privity.

Finding, *supra*, that Plaintiff can only proceed on contract-based claims, the Court must now consider the appropriateness of Plaintiff's claims against C.V. Starr and Starr Holdings. The contract at issue in these cases is between Pandora and Starr Surplus. As Plaintiff conceded at oral argument there is no mention of named Defendants CV Starr or Starr Holdings. When asked at argument how CV Starr and Starr Holdings were involved, the only explanation that Plaintiff could supply was that CV Starr and Starr Holdings owned or controlled the operations of Starr Surplus. That, without more, is not enough to disregard the corporate form and impute Starr Surplus's potential liability upon CV Starr or Starr Holdings. *See Price v. Foremost Indus.*, Inc., No. CV 17-00145, 2018 WL 1993378, at *4 (E.D. Pa. Apr. 26, 2018) (Baylson, J.) (granting motion to dismiss with prejudice because "[t]he, 'mere

---

[8] Plaintiff may arguably have implicitly brought a count for bad faith. But because, as will be explained *infra*, this Court has concluded the Complaints do not state a claim upon which relief can be granted for breach of contract, there are no facts pleaded which could possibly support a claim for bad faith. *Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 249 F. Supp. 2d 569, 570 (E.D. Pa. 2003) (Brody, J.) (holding that in all but the rarest circumstances, "a bad faith claim is contingent on the success of the underlying breach of contract claim.").

ownership' of a subsidiary does not justify the imposition of liability on a parent company); *see also Clientron Corp. v. Devon IT, Inc.*, 154 F. Supp. 3d 132, 147 (E.D. Pa. 2015) (Baylson, J.) (noting that to impose liability on a parent company, a Complaint must alleged that the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised as an incident of ownership).[9]

Here, there are no such allegations that would permit this Court to pierce the corporate veil as to CV Starr or Starr Holdings. Plaintiff, at oral argument, indicated he had no other facts that might permit such an inference. For that reason, the Complaints must be dismissed as to those entities, with prejudice.

> ii. **Plaintiff's claims against Starr Surplus must be dismissed because he has not alleged direct harm from the breach of contract to himself, personally.**

In both cases, Plaintiff has brought the proceedings *pro se* on behalf of himself individually. Because he is proceeding *pro se*, an individual claim is his only choice, as both federal and Pennsylvania law prohibit appearing *pro se* on behalf of an LLC like Pandora. *See*: *In re 69 N. Franklin Tpk., LLC,* 693 F. App'x 141, 144 (3d Cir. 2017) ("It is well established that a corporate entity such as a limited liability company may not proceed pro se and must be represented by legal counsel"); *David R. Nicholson, Builder, LLC v. Jablonski*, 163 A.3d 1048, 1054 (Pa. Super. 2017) ("LLC

---

[9] The Contract does not include a choice of law provision, and the Parties have not extensively briefed which state's law should control. The contract principles applied by the Court today are basic principles which are broadly applicable in the various jurisdictions implicated by the Contract and Pandora's activities. For that reason, this Court will not engage in a full choice of law analysis.

entities, generally, may not proceed in Pennsylvania courts of common pleas except through a licensed attorney.").

Therefore, the Complaints only state a claim upon which relief could be granted if they plead some ascertainable harm to Plaintiff, *individually*, and not merely in his capacity as co-owner and operator of Pandora. Plaintiff cannot survive by way of an individual claim which alleges harm that is effectively a duplicate of the harm suffered by Pandora.

The Court has reviewed both Complaints for allegations which might arguably be an allegation of individual harm to Plaintiff, but the Court has found none. From the Court's review of the Complaints, Plaintiff alleges only passthrough harm. Plaintiff's theory of personal harm is that he personally had to pay for Pandora's legal representation. But given Pandora's existence as a separate legal entity, it was Plaintiff's choice to cover Pandora's bills. The fact that Plaintiff thought it was in his best interest to continue funding Pandora's defense does not create direct harm which might flow from Starr Surplus's alleged breach of the Contract. Pandora's legal fees, if harm at all, could only be harm to Pandora. Similarly, Plaintiff cannot claim personal damages from the diminution in Pandora's revenues or value simply because Plaintiff was a member of Pandora. That, too, is harm to Pandora. Plaintiff articulated harm by way of its passing through Pandora and onto him as a member. Plaintiff does not have standing to raise this sort of claim under Pennsylvania or California law (or the law of any other jurisdiction this Court is aware of).

Further, Plaintiff's Prayers for Relief tellingly also fail to make any such requests (Dkt. 455 at #1-1, ¶ 57(a), Dkt. 2685 at #1-1, ¶ 81(a)). At oral argument, every type of harm Plaintiff claimed personally impacted him was the impermissible passthrough harm raised in the Complaints. Plaintiff could not articulate any direct harm to himself. For this reason, the Complaints do not state a claim for which relief could be granted and dismissal must be granted.[10]

> iii. **Dismissal is without prejudice as to breach of contract against Starr Surplus, with Plaintiff given one more opportunity to replead.**

As explained above, Plaintiff's claims under the various insurance statutes against all defendants and claims for breach of contract and bad faith against CV Starr and Starr Holdings are dismissed with prejudice because no pleading could correct the flaws in them. Further, any claim which actually belongs to Pandora, not Plaintiff, is also dismissed with prejudice because Plaintiff could not individually bring them on Pandora's behalf. The only question that remains is whether dismissal of Wilson's breach of contract claim, against Starr Surplus brought on behalf of himself individually, should be with or without prejudice.

---

[10] Plaintiff ably articulated at oral argument that he was an "Insured Person" under Section 2(i) of the Contract, and therefore at least arguably entitled to coverage for claims against him individually, if made in his capacity as director, officer, partner, member, or employee of Pandora. That coverage might arguably mean he is an intended beneficiary of the Contract and might have an individual claim for whatever damages he, personally, incurred for the representation for himself, personally (to the extent those damages could be segregated from those incurred for the representation of Pandora Folk). But no such allegations are currently present in the Complaints.

As noted *supra* in footnote 10, Plaintiff might have a narrow route to successfully plead an individual claim for breach of contract. That claim could only be against Starr Surplus and would only be permitted to make allegations regarding harm Plaintiff *personally* suffered as a result of Starr Surplus's failure to cover his *own* legal expenses as an intended beneficiary of the policy (not those of Pandora) in the Bluegreen Lawsuit. This would not include any amount Plaintiff spent on legal expenses incurred for Pandora or Folk. This would also not include any amount that Pandora or Folk spent on Plaintiff's personal legal expenses. It would only conceivably include the losses Plaintiff suffered for his *own* representation and the judgment against him.[11]

Before ultimately granting leave to amend, this Court hesitated for at least two reasons. One reason is that this Court is at least somewhat dubious as to whether the conduct alleged in Bluegreen Complaint[12] were "[s]olely in the performance of Timeshare Consulting Services for others for a fee." (Contract at § 2(q); *id.* at Declarations, Item 9). The Bluegreen Complaint alleges that Pandora was running a scam on its customers, lied to them, and provided no service. While the word

---

[11] To be clear, this Court is not deciding now whether such an individual claim would be cognizable, as the parties have not briefed or argued whether an employee or member of a business entity can individually sue that entity's insurance carrier claiming third party beneficiary status to obtain individual coverage. Absent that briefing, it strikes this Court as at least *conceivable* that such a claim might be legally permissible. If raised in a future dispositive motion, this Court will consider this issue *de novo*.

[12] Importantly, when making a coverage determination, it is the accusations which are relevant, not the actual facts.

15

"consulting" can be interpreted broadly, and such broad interpretation may well prevent dismissal at the 12(b)(6) phase, the use of the word consulting as a limiting principle for the policy suggests the word was to be assigned *some* meaning. This Court welcomes the Parties' future briefing on the meaning of that phrase and how other courts have interpreted similar phrases if Plaintiff files an amended complaint and Defendant files another motion to dismiss.[13]

The other reason this Court thought carefully about dismissing with prejudice is that Plaintiff's second complaint in this case, briefing on the issue of remand, comments at oral argument, and documentation provide at oral argument all hew in the direction of "sovereign citizen" type arguments. These arguments typically question the jurisdiction of Article III federal courts based upon nonsense interpretations of irrelevant statutes. Plaintiff's arguments were no exception, including the classic reference to the fringes on the flag in the courtroom. As mentioned *supra*, Courts in this Circuit routinely deny leave to amend when alerted to a *pro se* plaintiff proceeding on these theories.

---

[13]    Defendant also suggested at oral argument and in a supplemental filing requested by the Court that certain lawsuits which predated both the Bluegreen Litigation and the effective date of the Policy should be considered part of the same "claim," such that the claim in the Bluegreen Litigation was untimely as predating the Policy. This Court will not foreclose that argument from being raised in the future. But as an advisory opinion, it seems to this Court that separate litigation brought by different plaintiffs alleging different victims of the alleged scam with respect to different timeshares are likely different claims. By analogy, this Court would have little difficulty concluding that two auto accidents involving the same driver recklessly blowing through the same traffic light on different days and hitting different motorist would be different claims.

This Court will not take that step at this time. At oral argument, Plaintiff appeared thoughtful, showed respect to the tribunal, and accepted the Court's rulings and explanations as to what the law requires and as to the nature of this Court's jurisdiction. Based on these characteristics, this Court believes that Plaintiff made these arguments with a sincere belief in their accuracy, but will leave these sovereign citizen beliefs behind, having been educated as to their inapplicability. The Court reiterates to Plaintiff that these arguments have never been accepted by any court, whether state or federal, in the country. These arguments are disinformation and scams, designed to prey upon those without legal training who cannot afford to hire professional attorneys. Any future allusion to these arguments or principles will weigh heavily against further leave to amend.

V.      **Conclusion**

For all the reasons explained above, the Motions to Dismiss are granted, and the Motion to Remand is denied. Dismissal is with prejudice as to CV Starr and Starr Holdings, as to any claims purportedly arising under the state statutes and regulations identified, and as to any claim purportedly on Pandora's behalf. Meaning Mr. Wilson may not refile a complaint against CV Starr and Starr Holdings.

Dismissal is without prejudice as to breach of contract and bad faith claims brought by Plaintiff individually. Plaintiff will have until September 15, 2025 to re-file an amended complaint on his own behalf against Starr Surpluses which cures the issues identified above in the matter docketed as case No. 2:25-cv-00455. The matter docketed as case No. 2:25-cv-02685, which was later consolidated with Case 455, will

remain closed. If Plaintiff does not timely file an amended complaint, Case 455 will be closed permanently.

DATED: August 15, 2025                          BY THE COURT:

                                                                                                                          _____
                                                                                                                          GAIL WEILHEIMER          J.