# EXHIBIT A
Copy of original Starr Policy

 **Starr Surplus Lines Insurance Company**

## SPECIALTY PROFESSIONAL LIABILITY POLICY

POLICY NUMBER: 1000634524201
RENEWAL OF: N/A

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION AMOUNT. PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

### DECLARATIONS

**ITEM 1:** **NAMED INSURED:** Pandora Marketing LLC

**ADDRESS:** 26970 Aliso Viejo Parkway Ste 150
Aliso Viejo, CA 92656

**ITEM 2:** **POLICY PERIOD:** From: October 13, 2020 to: October 13, 2021
**(12:01 a.m. Standard Time at the address stated in Item 1)**

**ITEM 3:** **LIMITS OF LIABILITY (INCLUSIVE OF DEFENSE COSTS)**

$1,000,000   each **Claim** during the **Policy Period**

$1,000,000   all **Claims** in the aggregate during the **Policy Period**

**ITEM 4:** **RETENTION** $100,000   each **Claim** during the **Policy Period**

**ITEM 5:** **PENDING OR PRIOR DATE:** October 13, 2020

**ITEM 6:** **RETROACTIVE DATE:** October 13, 2017

**ITEM 7:** **PREMIUM:** $125,000

| | | |
|---|---|---|
| Premium | | $115,000.00 |
| CA Tax | 3.00% | $3,450.00 |
| CA Stamping | 0.25% | $287.50 |
| Total | | $118,737.50 |

**ITEM 8:** **DISCOVERY PERIOD**

A. One Year: 100% of the premium set forth in Item 7, above

B. Two to Six Years: premium to be determined

SS PL SPL 25002 (11/09)                1

DECLARATIONS (continued)                                POLICY NO.: 1000634524201

**ITEM 9:  PROFESSIONAL SERVICES TO BE INSURED**
Solely in the performance of Timeshare Consulting Services for others for a fee.

**ITEM 10: ADDRESS OF INSURER AND ITS AUTHORIZED CLAIMS AGENT FOR NOTICES UNDER THIS POLICY**

A. <u>Claims-Related Notices</u>

STARR ADJUSTMENT SERVICES, INC.
399 PARK AVENUE, 9TH FLOOR
NEW YORK, NY 10022

e-mail: StarrFLPLClaims@starrcompanies.com

B. <u>All Other Notices To The Insurer:</u>

STARR SURPLUS LINES INSURANCE COMPANY
ATTN: PROFESSIONAL LIABILITY DEPARTMENT
399 PARK AVE. 8TH FLOOR
NEW YORK, NY 10022

In Witness Whereof, the **Insurer** has caused this policy to be executed and attested. This policy shall not be valid unless countersigned by a duly authorized representative of the **Insurer**.

_____            _____
Steve Blakey, President and CEO              Nehemiah E. Ginsburg, General Counsel

SS PL SPL 25002  (11/09)                    2


**Starr Surplus Lines Insurance Company**

---

*Specialty Professional Liability Policy*

In consideration of and subject to the payment of the premium and in reliance upon all information and documents contained in or submitted with the **Application**, which shall be deemed to be attached to and part of this policy, and further subject to all terms, conditions and other provisions in this policy, including endorsements hereto, Starr Surplus Lines Insurance Company (the **"Insurer"**) and the **Parent Company**, on behalf of all **Insureds**, agree as follows:

## 1. INSURING AGREEMENT

The **Insurer** shall pay on behalf of the **Insured** all **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for a **Wrongful Act** by the **Insured** or any entity for whom the **Insured** is legally liable, and duly reported to the **Insurer** in accordance with Section 8 of this policy.

## 2. DEFINITIONS

(a) **"Application"** means all signed **Applications**, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this policy or for any other policy of which this policy is a renewal, replacement or which it succeeds in time.

(b) **"Claim"** means any:

   (1) written demand for monetary or non-monetary relief or services made against an **Insured**;
   (2) civil judicial, administrative, arbitral or regulatory proceeding for monetary relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:
   (i) service of a complaint or similar pleading;
   (ii) demand for or notice of arbitration; or
   (iii) receipt or filing of a notice of charges;
   (3) written request to toll or waive the applicable statute of limitations relating to a potential **Claim** against an **Insured** for a **Wrongful Act**.

(c) **"Cleanup Costs"** means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(d) **"Company"** means:

   (1) the Named **Insured**;
   (2) any **Subsidiary** of the Named **Insured**; and
   (3) the Named **Insured** or any **Subsidiary** as a debtor, a debtor-in-possession or equivalent status.

(e) **"Defense Costs"** means:

(1) reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;
(2) premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond;
(3) any fees, costs, charges or expenses incurred by the **Insured** at the specific request of the **Insurer** to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

"**Defense Costs**" does not include (i) amounts incurred prior to the date a **Claim** is first made and reported to the **Insurer**, pursuant to the terms of this policy, and (ii) compensation or benefits of any **Insured Person** or any overhead expenses of the **Company**.

(f) "**Disciplinary Proceeding**" means any proceeding by a state licensing board, governmental agency or self-regulatory organization with authority to license or regulate the **Professional Services** performed by an **Insured**, including but not limited to an organization with the authority to investigate charges made by a client or former client for alleged misconduct in rendering or failure to render **Professional Services**.

(g) "**Financial Impairment**" means the **Company** becoming a debtor-in-possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**.

(h) "**Insured (s)**" means the **Company** and any **Insured Person**.

(i) "**Insured Person(s)**" means any person who is or was a director, officer, partner, member of a management committee or employee (including leased and contract employees) of the **Company**, but solely in the capacity he or she is alleged to have rendered or failed to render **Professional Services**.

(j) "**Loss**" means:

(1) damages, settlements or judgments;
(2) pre-judgment or post-judgment interest;
(3) court costs and attorney fees awarded in favor of a **Claim** ant against the **Insured**; and
(4) **Defense Costs**.

"**Loss**" does not include:

(i) the return or restitution of fees or other compensation paid to the **Insured** for **Professional Services** rendered;
(ii) taxes, fines, penalties and liquidated damages;
(iii) any cost of compliance or liability incurred by any **Insured**, other than **Defense Costs**, in connection with a **Claim** to the extent such **Claim** results in a settlement or an award of non monetary relief or services to a **Claim** ant, including, but not limited to, the cost of correcting, re-performing or completing any **Professional Services**;
(iv) matters that may be deemed uninsurable under applicable law; and punitive, exemplary and multiplied damages; provided, however, if such damages are otherwise insurable under applicable law and regulation, coverage will be provided for an award of punitive or exemplary damages made against the **Insured** for or based upon a **Wrongful Act** in the performance of **Professional Services**, in excess of the **Retention** and up to a maximum aggregate sublimit of liability of $250,000. This sublimit shall be a part of, and not in addition to, the Limit of Liability set forth in Item 3.on the Declarations Page of this policy. The enforceability of the coverage provided by this provision shall be governed by such applicable law that most favors coverage for favorable to the insurability of such damages.

(k) **"Named Insured"** means the entity named in Item 1 of the Declarations.

(l) **"Personal Injury"** means injury arising from one or more of the following offenses:
   (1) false arrest, detention or imprisonment;
   (2) malicious prosecution;
   (3) wrongful entry into, or eviction of a person from a room, dwelling, or premises that the person occupies;
   (4) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   (5) oral or written publication of material that violates a person's right of privacy.

(m) **"Personal Litigation Expenses"** means any reasonable expenses, including **Loss** of wages, the **Insured** incurs directly as a result of attending arbitration proceedings or trial in the defense of a covered **Claim**.

(n) **"Policy Period"** means the period from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(o) **"Pollutants"** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on, any list of hazardous substances issued by the United States Environmental Protection Agency or any foreign, state, county, municipality, or locality counterpart thereof. Such substances shall include, without limitation, nuclear material or waste, any solid, liquid, gaseous or thermal irritant or contaminant, or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, wastewater, oil or products containing oil, lead or products containing lead, infectious or medical waste, and any noise.

(p) **"Pollution"** means the actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere. **Pollution** also means any **Cleanup Costs**.

(q) **"Professional Services"** means those services performed by or on behalf of the **Company** and described in Item 9 of the Declarations.

(r) **"Subsidiary"** means any entity, in which more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors in such entity is owned or controlled, directly or indirectly, in any combination, by the **Named Insured**.

**"Subsidiary"** also means any not-for-profit entity, which is under the exclusive control of the **Company**.

With respect to a **Claim** made against any **Subsidiary** or any **Insured Person** thereof, this policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective time such entity becomes a **Subsidiary** and prior to the effective time that such entity ceases to be a **Subsidiary**.

(s) **"Wrongful Act(s)"** means any actual or alleged act, error or omission committed by the **Insured** in the course of rendering any or all of the **Professional Services** for others.

3. **COVERAGE EXTENSIONS**

   **INSURED PERSONAL LITIGATION EXPENSES REIMBURSEMENT**

Solely in the event the **Insured** is required by the **Insurer** to attend arbitration proceedings or trial in the defense of a covered **Claim**, the **Insurer** will reimburse the **Insured** for the **Insured's Personal Litigation Expenses**.

The coverage provided by this provision is subject to the following:

1. The maximum reimbursable amount for **Personal Litigation Expenses** shall not exceed $250 per day for each **Insured** ;
2. **Insurer**'s maximum total sublimit of liability for all such reimbursements of **Personal Litigation Expenses** shall not exceed $5,000 per **Claim** for all **Insured** s, which sublimit of liability shall be part of, and not in addition to, the **Limits of Liability** set forth in ITEM 3., LIMITS OF LIABILITY, of the DECLARATIONS; and
3. The Retention amount set forth in Item 4.of the DECLARATIONS shall not apply.

## DISCIPLINARY PROCEEDINGS

The **Insurer** shall defend any **Disciplinary Proceedings** against the **Insured**. **Defense Costs** for **Disciplinary Proceedings** will be subject to a sublimit of liability of $10,000, which sublimit of liability shall be part of, and not in addition to, the Limit of Liability set forth in ITEM 3., LIMITS OF LIABILITY, of the policy **Declarations**.

The **Insurer** shall not be obligated to provide a defense for any **Disciplinary Proceedings** once the sublimit of liability of $10,000 has been exhausted.

The coverage provided by this provision is subject to the following:

1. As a condition precedent to coverage under this provision, upon becoming aware of the **Disciplinary Proceeding**, an **Insured** shall immediately give written notice to the **Insurer** of such **Disciplinary Proceeding**; and
2. This policy will not cover any other part of **Loss**, other than **Defense Costs** as set forth above, arising out of, based upon or attributable to a **Disciplinary Proceeding**. As such, the **Insurer** shall not have any obligation to pay for any judgment, award, settlement or other relief rendered in any **Disciplinary Proceeding**.

## ESTATES, HEIRS, OR LEGAL REPRESENTATIVES COVERAGE

This policy shall cover **Loss** arising from any **Claim** s made against the estates, heirs, or legal representatives of any deceased person who was an **Insured** Person at the time the **Wrongful Acts** upon which such **Claim** s are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such estates, heirs, or legal representatives, but shall apply only to **Claim** s arising out of any actual or alleged **Wrongful Acts** of an **Insured** Person.

This policy shall also cover **Loss** arising from any **Claim** s made against the legal representatives of any incompetent, insolvent or bankrupt person who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** s are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such legal representatives, but shall apply only to **Claim** s arising out of any actual or alleged **Wrongful Acts** of an **Insured** Person.

### EXPRESS DOMESTIC PARTNER AND LAWFUL SPOUSE COVERAGE

This policy shall also cover **Loss** arising from any **Claim**s made against the lawful spouse or domestic partner (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world or any formal program established by the **Company**) of an **Insured Person** for all **Claim**s arising solely out of his or her status as the spouse or domestic partner of an **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of the spouse or domestic partner, but shall apply only to **Claim**s arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

The coverage extensions set forth in this Section 3 are subject to all other terms and conditions of this policy.

## 4. EXCLUSIONS

This policy shall not cover any **Loss** in connection with any **Claim**:

(a) alleging, arising from, based upon or attributable to any deliberate criminal or deliberate fraudulent act by an **Insured** if a final judgment or adjudication establishes that such criminal or fraudulent act occurred;

(b) alleging, arising from, based upon or attributable to the gaining in fact of any personal profit or advantage to which the **Insured** is not legally entitled;

In determining the applicability of the exclusions set forth in Section 4 (a) and (b), above, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured Person** shall not be imputed to any other **Insured Person**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured Person** shall be imputed to the **Company;**

(c) for any **Insured**'s actual or alleged liability under any contract or agreement, except to the extent such liability would have attached to the **Insured** even in the absence of such contract or agreement;

(d) alleging, arising from, based upon or attributable to any actual or alleged liability of the **Insured** under any express or implied warranty or guarantee;

(e) alleging, arising from, based upon or attributable to, as of the Pending or Prior Date set forth in Item 5 of the Declarations, any pending or prior: (i) litigation; or (ii) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) alleging, arising from, based upon or attributable to the same facts or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

(g) alleging, arising from, based upon, attributable to or in consequence of the rendering of or failure to render **Professional Services** for:

(i) any **Insured**;
(ii) any entity or person that has an ownership interest in an **Insured** to the extent of 20% or greater, or which to any extent controls, operates or manages an **Insured**;
(iii) any entity that is owned by any **Insured** to the extent of 20% or greater, or which to any extent is controlled, operated or managed by any **Insured**; or
(iv) any entity in which any **Insured** is a director, officer, partner or principal shareholder; or
(v) any person or entity and that is brought or maintained by any **Insured** against any other **Insured**;

(h) for bodily injury (except emotional distress or mental anguish when associated with a **Wrongful Act**), sickness, disease or death of any person, **Personal Injury**, or damage to or destruction of any tangible property, including the **Loss** of use thereof;

(i) alleging, arising from, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in any capacity, other than as an **Insured Person**;

(j) alleging, arising from, based upon or attributable to any **Wrongful Act** committed before the Retroactive Date set forth in Item 6 of the Declarations;

(k) alleging, arising from, based upon or attributable to **Pollution** in connection with any real property or facility which is or was at any time owned, operated, rented or occupied by the **Insured** or by any entity that wholly or partly owns, operates, manages or otherwise controls the **Insured**, or any entity that is wholly or partly owned, operated, managed or otherwise controlled by the **Insured**;

(l) any actual or alleged violation of any federal, state, or local statutes, ordinances, or regulations regarding or relating to unsolicited telemarketing, solicitations, emails, faxes, or any other communications of any type or nature, including but not limited to any anti-spam and do-not-call statutes, ordinances, or regulations;

(m) the failure to procure or maintain, or to advise of the need to procure or maintain, insurance, suretyship or bonds;

(n) alleging, arising from, based upon or attributable to:

(1) exposure to or discharge, release, escape, seepage, migration, dispersal or disposal of mold, fungi, mildew, yeast, bacteria or spores; or
(2) any demand, request or order that any **Insured** test for, monitor, clean up, remove or contain, or in any way respond to, or assess the affects of mold, fungi, mildew, yeast, bacteria or spores;

(o) alleging, arising from, based upon or attributable to nuclear reaction, radiation or contamination, under any circumstances and regardless of cause, within or originating from a nuclear reactor or any facility where nuclear waste or material is processed, stored or disposed;

(p) alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment insurance, retirement benefits, social security benefits or similar law;

(q) alleging, arising from, based upon or attributable to, or in any way involving the Employee Retirement Income Security Act of 1974, amendments thereto and regulations promulgated or adopted thereunder, or similar provisions of federal, state, provincial, local laws or common law or any of their amendments;

(r) alleging, arising from, based upon or attributable to any violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, or any state Blue Sky or securities law or similar state or federal laws, including any regulation or order issued pursuant to any such law;

(s) alleging, arising from, based upon or attributable to any infringement of any patent, copyright, trademark, service mark, trade dress or trade name;

(t) alleging, arising from, based upon or attributable to any violation of the Interstate Commerce Act of 1887, The Sherman Antitrust of 1890, The Clayton Act of 1914, The Robinson-Patman Act of 1938, The Cellar Kefauver Act of 1950, The Competition Act, the Federal Trade Commission Act of 1914, amendments thereto, rules or regulations thereunder and amendments thereto, or similar provisions of any federal, state, or local statutory law or common law designed to prevent monopoly, preclude price fixing, or otherwise protect competition;

(u) alleging, arising from, based upon or attributable to, or in any way involving an employment relationship with an **Insured**, including but not limited to disputes involving termination of employment, failure to hire, failure to promote, discrimination or harassment of any kind, or injury, damages or other harm suffered by an employee, including leased or contract employees, of an **Insured**;

(v) alleging, arising from, based upon or attributable to, or in any way involving discrimination or harassment of any kind, regardless of whether related to employment;

(w) alleging, arising from, based upon or attributable to, or in any way involving any dispute over fees attributable to **Professional Services**;

(x) in the event that such coverage would not be in compliance with any United States of America economic or trade sanctions, laws or regulations, including but not limited to the U.S. Treasury Department's Office of Foreign Assets Control, or any similar foreign, federal, state or statutory law or common law.

## 5. DEFENSE OF CLAIM S AND SETTLEMENTS

The **Insurer** has the right and duty to defend any **Claim** against an **Insured** covered under this policy, even if such **Claim** is false, fraudulent or groundless, provided such **Claim** is made and maintained within the United States of America, its territories or possessions. The **Insurer's** duty to defend any **Claim**, however, shall cease upon the exhaustion of the applicable limit of liability under this policy by payment of **Loss**.

With regard to any **Claim** made or maintained outside the United States of America, its commonwealths, districts, territories or possessions, the **Insurer** shall not have any duty to assume charge of the investigation, defense or settlement of the **Claim**, but rather shall have the right and shall be given the opportunity to associate with the **Insure** in the investigation and defense of any such **Claim**. In such cases, the **Insured** shall investigate and defend as is reasonable and necessary. The **Insurer** shall pay on behalf of the **Insured** any **Loss**, including **Defense Costs**.

The **Insured (s)** shall not admit or assume any liability, incur any **Defense Costs**, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured (s)** and/or any settlements or judgments agreed to by the **Insured (s)** without such consent shall not be covered by this policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention.

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counter-claim, cross-claim or third-party **Claim**, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

The **Insurer** shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate. In the event the **Insured** refuses to consent to a settlement acceptable to the **Claim** ant in accordance with the **Insurer's** recommendation, the **Insurer's** liability for **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled the **Claim**; plus (2) any **Defense Costs** incurred up to the date the **Insured** refused to settle such **Claim**; plus (3) seventy percent (70%) of covered **Loss**, other than **Defense Costs**, in excess of the amount for which the **Insurer** could have settled the **Claim**. However, in no event shall the **Insurer's** liability exceed the applicable Limit of Liability as set forth in Item 4 of the Declarations.

The **Insurer** shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

## 6. LIMITS OF LIABILITY

The aggregate Limit of Liability, as set forth in Item 3 of the Declarations, is the maximum limit of liability of the **Insurer** for all **Loss**, including **Defense Costs**, from all **Claim** s first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy.

Any sublimit(s) of Liability, whether set forth in Item 3 of the Declarations or as otherwise provided under the terms of this policy, shall be part of, and not in addition to, the aggregate Limit of Liability set forth in Item 3 of the Declarations. Each sublimit of Liability is the maximum limit of liability of the **Insurer** for all **Loss,** including **Defense Costs,** from all **Claim** s first made during the **Policy Period** (or Discovery Period, if applicable) and reported to the **Insurer** in accordance with the terms of this policy.

If the aggregate Limit of Liability as set forth in Item 3 of the Declarations is exhausted by the payment of **Loss**, all obligations of the **Insurer** under this policy will be completely fulfilled and the **Insurer** will have no further obligations under this policy of any kind, and the premium as respects the policy will be fully earned.

**Defense Costs** are part of, and not in addition to, the aggregate Limit of Liability as set forth in Item 3 of the Declarations and payment by the **Insurer** of **Defense Costs** shall reduce and may exhaust such Aggregate Limit(s) of Liability. **Defense Costs** are subject to the aggregate Policy Limit of Liability set forth in Item 3 of the Declarations.

If a **Discovery Period** is purchased by the **Insured** pursuant to Section 10 of this policy, the Limit of Liability for the **Discovery Period** shall be part of, and not in addition to, the applicable Limits of Liability as set forth in Item 3 of the Declarations.

## 7. RETENTION CLAUSE

Subject to all other terms and conditions of this policy, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention as set forth in Item 4 of the Declarations. A single Retention amount shall apply to all **Loss** arising from multiple **Claim s** alleging the same or related **Wrongful Acts**. The Retention shall be borne by the **Insured s** and remain un**Insured**.

If the **Company** is required or permitted to indemnify an **Insured Person** for any **Loss** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of a **Company** and does not do so for any reason, the **Insurer** shall not require payment of the applicable Retention by the **Insured Person**. However, the **Company** hereby agrees to reimburse the **Insurer** for the full amount of such applicable Retention, unless the **Company** is unable to do so because of **Financial Impairment**.

## 8. REPORTING OF CIRCUMSTANCES AND CLAIM S

The **Named Insured (s)** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice of a **Claim** made against an **Insured** to the **Insurer** at the address set forth in Item 10 A of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

Such notice shall be given as soon as practicable after any **Insured Person** becomes aware of the **Claim**, but in no event later than sixty (60) days after the expiration of the **Policy Period** (or Discovery Period, if applicable).

Any **Claim** alleging, arising out of, based upon or attributable to the facts alleged in a previously noticed **Claim** or circumstances, or alleging the same or related **Wrongful Act** alleged in the previously noticed **Claim** or circumstances, shall be considered related to the previously noticed **Claim** and shall be deemed to have been made at the time notice of the previously noticed **Claim** or circumstances was provided.

If an **Insured** becomes aware of any circumstances, which may reasonably be expected to give rise to a **Claim** being made against an **Insured**, the **Named Insured** may provide written notice to the **Insurer** at the address set forth in Item 10 A of the Declarations. This written notice shall include the **Wrongful Act** allegations anticipated and the reasons for anticipating a **Claim**, with full particulars as to dates, persons and entities involved. If a **Claim** is subsequently made against such **Insured** and reported to the **Insurer** arising out of, based upon or attributable to the previously noticed circumstances, such **Claim** shall be considered first made at the time notice of such circumstances was provided to the **Insurer**.

## 9. ALLOCATION

In the event the **Insured (s)** incurs **Loss** that is both covered and not covered by this policy, either because the **Claim** includes both covered and uncovered matters or because the **Claim** includes both **Insured** and uninsured parties, all **Loss** incurred by the **Insured** from such **Claim** will be allocated by the **Insurer** between covered **Loss** and uncovered **Loss** based upon the relative legal and financial exposures of the parties to such matters. In the event of a settlement of such **Claim**, the allocation shall also be based upon the relative benefits to the **Insured s** from such a settlement.

If an allocation of **Loss** cannot be agreed to by the **Insurer** and the **Insured** : (1) the **Insurer** shall pay those amounts which it believes to be fair and equitable until an amount shall be agreed upon or determined pursuant to the provisions of this policy; and (2) there will be no presumption of allocation of **Loss** in any arbitration, suit or other proceeding

## 10. DISCOVERY CLAUSE

If the **Company** or the **Insurer** refuses to renew this policy, or if this policy is terminated by the **Insurer** for any reason (except for non-payment of premium), or if an **Organizational Change** as described in Section 14, below, takes place, the **Insured (s)** shall have the right to purchase a **Discovery Period** of up to six years following the effective date of such non-renewal, termination or **Organizational Change.**

The **Insured 's** right to purchase a **Discovery Period** shall lapse unless written notice of election to purchase such **Discovery Period** and the additional premium for such **Discovery Period** is received by the **Insurer** or its authorized agent within sixty days after such non-renewal, termination or **Organizational Change**. The additional premium for a **Discovery Period** of one year is set forth in Item 8 of the Declarations. The **Insurer** shall determine the additional premium for a **Discovery Period** of more than one year.

During such **Discovery Period**, the **Insured** may provide the **Insurer** with written notice, pursuant to Section 8 of this policy, of **Claims** made against an **Insured** solely with respect to **Wrongful Acts** occurring prior to the effective date of the non-renewal or termination of the policy or the effective date of the **Organizational Change** and otherwise covered by this policy.

The Limit of Liability for the **Discovery Period** shall be part of, and not in addition to, the applicable Limits of Liability set forth in Item 3 of the Declarations.

The **Discovery Period** premium shall be fully earned at the inception of the **Discovery Period**. The **Discovery Period** is non-cancellable.

## 11. OTHER INSURANCE

The insurance provided by this policy shall apply only as excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess insurance over the applicable Limit of Liability provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. This policy shall not be subject to the terms and conditions of any other insurance policy.

## 12. REPRESENTATIONS

It is agreed that the **Insurer** has relied upon the information and documents contained in and furnished with the **Application** in issuing this policy. If any of such information and documents, in whole or in part, are untruthful or inaccurate, then this Policy shall be deemed void as to any and all **Insureds** who knew as of the date of the **Application** such untruthful or inaccurate information and documents, regardless of whether it was known that they were being inaccurately or untruthfully disclosed with respect to the **Application**.

## 13. CANCELLATION AND NON RENEWAL CLAUSE

This policy may be cancelled by the **Named Insured** by sending written prior notice to the **Insurer** as set forth in Item 10 B of the Declarations stating when thereafter the cancellation of the policy shall be effective. The policy terminates at the date and hour specified in such notice. This policy may also be cancelled by the **Named Insured** by surrender of this policy to the **Insurer** as set forth in Item 10 B of the Declarations. The policy terminates as of the date and time of surrender. The **Insurer** shall retain the customary short rate proportion of the premium, unless stated otherwise herein.

This policy shall not be cancelled by or on behalf of the **Insurer** except by reason of non-payment of the premium set forth in Item 7 of the Declarations. The **Insurer** may cancel the policy by delivering to the **Named Insured** or by mailing to the **Named Insured**, by registered mail, or by courier at the **Named Insured 's** address set forth in the Declarations, written notice stating when, not less than twenty (20) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. In the event of such cancellation, the policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Named Insured**.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

The **Insurer** shall have no obligation to renew this policy. In the event the **Insurer** decides to non-renew this policy, it shall deliver or mail to the **Named Insured**, as identified in Item 1 of the Declarations, written notice of such decision at least sixty (60) days prior to the expiration of the **Policy Period**.

## 14. ORGANIZATIONAL CHANGES

If during the **Policy Period**:

(1) the **Named Insured** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2) any person or entity or group of persons or entities acting in concert shall acquire more than 50% of the **Named Insured**,

(any events described in (1) or (2) are referred to herein as an "Organizational Change") then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of an Organizational Change. However, there shall be no coverage afforded by this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Organizational Change. This policy shall be non-cancellable and the entire premium shall be deemed fully earned upon the effective time of the Organizational Change. The **Insured (s)** shall also have the right to purchase a **Discovery Period** described in Section 10, above, in the event of an Organizational Change.

The **Named Insured** shall give the **Insurer** written notice of the **Organizational Change** as soon as practicable, but no later than thirty days after the effective date of the Organizational Change.

## 15. AUTHORIZATION AND NOTICES

The **Named Insured** shall act on behalf of all **Insured** s with respect to all matters as respects this policy including: (1) giving of notice of **Claim** ; (2) giving and receiving of all

correspondence and information; (3) giving and receiving notice of cancellation; (4) payment of premiums; (5) receiving of any return premiums; (6) receiving and accepting of any endorsements issued to form a part of this policy; and (7) the exercising of any right to a Discovery Period.

### 16. VALUATION AND CURRENCY

All amounts stated in this policy are expressed in United States dollars and all amounts payable under this policy are payable in United States dollars. If a judgment rendered or settlement entered into under this policy are stated in a currency other than United States dollars, then payment under this policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the final judgment is rendered or the settlement payment is established.

### 17. WORLDWIDE TERRITORY

This policy applies to **Wrongful Acts** taking place and **Claim s** made anywhere in the world, to the extent coverage hereunder is not prohibited by applicable law.

### 18. ASSIGNMENT AND CHANGES TO THE POLICY

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

Notice to any agent or knowledge possessed by any agent or person acting on behalf of the **Insurer**, other than the **Insurer** as identified in Item 10 B of the Declarations, will not result in a waiver or change in any part of this policy or prevent the **Insurer** from asserting any right under the terms and conditions of this policy. The terms and conditions of this policy may only be waived or changed by written endorsement signed by the **Insurer** or its authorized agent.

### 19. BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of any of its obligations hereunder.

### 20. SUBROGATION

In addition to any right of subrogation existing at law, in equity or otherwise, and in the event of any payment by the **Insurer** under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured (s)**' rights of recovery. The **Insured (s)** shall execute all papers required (including those documents necessary for the **Insurer** to bring suit or other form of proceeding in their name) and do everything that may be necessary to pursue and secure such rights.

### 21. ACTION AGAINST THE INSURER

Except as provided in Section 2, above, no action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all material terms of this policy and the amount of the **Insured**'s obligation has been fully determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the **Claim** ant(s) and the **Insurer**.

No person or entity shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall such **Insured** or legal representatives of such **Insured** implead the **Insurer**.

### 22. CONFORMITY TO APPLICABLE LAW AND REGULATION

Any terms of this policy, which are in conflict with the terms of any applicable laws construing this policy, including any endorsement to this policy, which is required by any state Department of Insurance, or equivalent authority ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement.

In the event any portion of this policy shall be declared or deemed invalid or unenforceable under applicable law, such invalidity or unenforceability shall not affect the validity or enforceability of any other portion of this policy.

## 23. HEADINGS

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of this policy's terms or conditions.

# Starr Surplus Lines Insurance Company

Administrative Office: 399 Park Avenue, 8th floor, New York, NY 10022

Endorsement No.: 01
This endorsement, effective: October 13, 2020 To October 13, 2021
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 1000634524201
Issued to: Pandora Marketing LLC
By: Starr Surplus Lines Insurance Company

## MINIMUM EARNED PREMIUM ENDORSEMENT

The policy is amended by adding the following:

Notwithstanding anything to the contrary in this policy, 25% of the Policy Premium as set forth in Item 7. of the DECLARATIONS shall be deemed fully earned as of the inception date of the **Policy Period** and non-refundable, and the policy shall be interpreted consistent therewith.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

CVS PL Manuscript SPL (10-12)


Case 2:25-cv-00455-GAW    Document 37-2    Filed 09/04/25    Page 18 of 20

# Starr Surplus Lines Insurance Company

Administrative Office: 399 Park Avenue, 8th floor, New York, NY 10022

Endorsement No.: 02
This endorsement, effective: October 13, 2020 To October 13, 2021
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 1000634524201
Issued to: Pandora Marketing LLC
By: Starr Surplus Lines Insurance Company

## RELIANCE ENDORSEMENT
### (Specified Applications)

In granting coverage under this **Policy**, it is understood and agreed that the Insurer has relied upon the statements, representations and warranties contained in the below-referenced application(s) (including materials submitted thereto and, if such applications are renewal applications, all such previous policy applications, and their attachments and materials, for which this Policy is a renewal or succeeds in time) as being accurate and complete. It is further understood and agreed that the Insureds warrant and represent to the Insurer that the statements, representations and warranties made in such application(s) were accurate on the date such statements and representations were so given. All such statements and representations in the below referenced application(s) are the basis of this Policy and are to be considered as incorporated into this Policy.

| TYPE OF POLICY APPLICATION | CARRIER | DATE SIGNED |
|---|---|---|
| Errors & Omissions Renewal Application | XL Catlin | 9/29/2020 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

SS PL SPL 10306 (10/08)

**Starr Surplus Lines Insurance Company**

Administrative Office: 399 Park Avenue, 8th floor, New York, NY 10022

Endorsement No.: 03
This endorsement, effective: October 13, 2020 To October 13, 2021
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 1000634524201
Issued to: Pandora Marketing LLC
By: Starr Surplus Lines Insurance Company

## Consultants Exclusion Endorsement

It is understood and agreed that:

Section 4. EXCLUSIONS, (d) is deleted in its entirety and replaced with the following:

(d) alleging, arising from, based upon or attributable to any actual or alleged liability of the **Insured** under any express or implied warranty or guarantee; including the guaranteeing of the availability of funds, the future value of real property, or any specified rate of return or interest.

Section 4. EXCLUSIONS, is amended by adding the following:

This policy shall not cover any **Loss** in connection with any **Claim** alleging, arising from, based upon or attributable to:

- the performance of or failure to perform services a Certified Public Accountant, attorney, lender, real estate agent or broker, insurance agent, escrow agent, closing agent, insurance broker, mortgage banker, mortgage broker, property developer, construction manager, property manager, architect or engineer;

- any **Insured** notarizing, certifying or acknowledging any signature not signed before such **Insured** at the time of such notarization, certification or acknowledgement;

- any actual or alleged commingling of funds;

- the rendering of financial, economic, investment advice or investment management services to any entity;

CVS PL MANUSCRIPT SPL (6-11)



## Starr Surplus Lines Insurance Company

- the failure or insolvency of any financial institution, including but not limited to any savings and loan, bank or insurance companies;

- any failure to provide goods or products, or perform services within a specified time period;

- the collection of or return of unearned fees, royalties or other compensation paid to an **Insured**;

- any cost or profit guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded; or

- the referral of a registered investment advisor who does not maintain an Investment Advisor Errors & Omissions Insurance Policy with an aggregate limit of liability of at least $1,000,000.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.