IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM JAMES WILSON III, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| | : No.: 2:25-cv-00455 |
| STARR SURPLUS LINES INSURANCE COMPANY, | : |
| Defendant. | : |

**MEMORANDUM**

I. Introduction

Before this Court is a Motion to Dismiss for Failure to State a Claim ("Motion" Dkt. #40) filed by Starr Surplus Lines Insurance Company ("Defendant") seeking to dismiss, with prejudice, claims made against it by William Wilson ("Plaintiff"). For the reasons explained below, Defendant's Motion is granted and Plaintiff's Complaint is dismissed with prejudice.

II. Factual and Procedural Background

a. The Insurance Policy

Plaintiff alleges that he is an officer, manager, and director of Pandora Marketing, LLC ("Pandora"), a business that "specializes in timeshare contract dispute resolution." (Dkt. #37 at ¶ 8). According to the Complaint, Plaintiff, on behalf of Pandora and himself, purchased a Specialty Professional Insurance Policy (the "Policy"), which included professional liability coverage for Plaintiff and Pandora's practice of "Timeshare Consulting Services." (*Id*. at ¶ 20). The Policy was sold and

1

issued out of California effective from October 13, 2020, to October 13, 2021, and is governed by California law. (*Id.* at ¶ 13).

The Policy covered losses from a "Wrongful Act," defined as "any actual or alleged act or omission committed by the Insured in the course of rendering any or all of the Professional Services for others." (*Id.*, Ex. A, at § 2(s)). In this context, "Professional Services" means services "[s]olely in the performance of Timeshare Consulting Services for others for a fee." (*Id.* at § 2(q)). The "Insured" refers both to Pandora and "any person who is or was a director, officer, partner, member of a management committee or employee . . . of [Pandora], but solely in the capacity he or she is alleged to have rendered or failed to render Professional Services." (*Id.* at §§ 2(h)–(i)). Notably, the Policy also contains an exclusion of coverage for claims "alleging, arising from, based upon or attributable to" any pending or prior litigation "which an Insured had notice, including any Claim alleging or derived from the same or essentially the same facts, or the same or related Wrongful Act(s)." (*Id.* at § 4(e)).

**b. Coverage Denial**

In November 2020, Plaintiff was named as an individual defendant alongside his business partner and Pandora in an action the Parties refer to as the "*Bluegreen* Lawsuit."[1] Plaintiff now alleges that Defendant failed to pay for a defense and for liability incurred by Plaintiff in his personal capacity.[2] (Dkt. #37 at 16). Importantly,

---

[1] Captioned as *Bluegreen Vacations Unlimited Inc., et al. v. Timeshare Lawyers P.A. d/b/a Federal Financial Law Group, et. al.*, 1:20-cv-24681 (S.D. Fla.).

[2] The Parties dispute whether Plaintiff is seeking coverage on behalf of Pandora. (*See* Dkt. #40 at 24–25). Ultimately, this does not impact the Court's conclusions as, explained *infra*, this Court finds the Policy barred coverage.

2

Plaintiff in this matter was involved in two separate prior lawsuits: *Wyndham Vacation Ownership, Inc., et al. v. Shell Vacations, LLC et al.* and *Diamond Resorts U.S. Collection Development, LLC, et al. v. Pandora Marketing, LLC, et al.*[3] These cases predated the execution of the Policy at issue here. Defendant argues that because the *Wyndham* and *Diamond Resorts* lawsuits shared factual allegations with the *Bluegreen* lawsuit, Defendant may deny coverage for the *Bluegreen* Lawsuit under the Pending and Prior Litigation exclusion (Dkt. #40 at 7).[4]

### c. The *Bluegreen* Lawsuit

As this Court detailed in a previous opinion:

The Complaint in the Bluegreen Lawsuit (the "Bluegreen Complaint") is against many parties alongside Pandora and Wilson. The allegations of the Complaint deal with Plaintiff and Pandora's activities with relation to its customers' timeshare obligations.

More specifically, the Bluegreen Complaint alleges that while Pandora advertised that they had a "process" for releasing timeshare owners from their agreements, Pandora's "process" was not legitimate. (Bluegreen Complaint at ¶¶ 1-2). Rather, this "process" merely facilitated a breach of contract by way of nonpayment, which resulted in the loss of ownership interests. (*Id.*) Bluegreen alleged that Pandora "sell[s] their illusory service to Bluegreen owners" and lead Bluegreen owners "to the conclusion that they can safely stop payments. . . ." (*Id.* at ¶ 3).

---

[3] Filed in the U.S. District Court for the Middle District of Florida on October 4, 2019, and in the U.S. District Court for the Southern District of Florida on January 31, 2020, respectively.

[4] The Court takes judicial notice of the prior cases cited by Defendant as they are matters of public record, specifically the *Bluegreen*, *Wyndham*, and *Diamond Resorts* lawsuits. (*See* Dkt. #40 at 7). Although the Third Circuit instructs district courts to use judicial notice sparingly at the pleading stage, neither Party contests the existence of these cases, and they are matters of public record are readily available to this Court. *See Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007), *as amended* (Nov. 20, 2007).

> Allegedly, Pandora falsely claims that its clients will be serviced by an attorney, but the clients never meet with an attorney. (*Id.* at ¶¶ 27-28). Instead, the attorneys Pandora works with "are expected to do nothing more than lend their name and signature to a form letter sent to Bluegreen." (*Id.* at ¶ 32). According to the Bluegreen Complaint, at least one purported lawyer used by Pandora is not a licensed attorney, and the law firm to which work is referred is not an actual law firm. (*Id.* at ¶ 34). The Bluegreen Complaint alleges that this "fake lawyer" step is taken to cut off communication between Bluegreen and the timeshare owners, which in turn means that Pandora's customers no longer receive notifications that they are delinquent. (*Id.* at ¶ 36). The Bluegreen Complaint alleges that the so-called lawyers provide no further service after the initial letter. (*Id.* at ¶ 38). Instead, the intent of Pandora, according to Bluegreen, is to have the owners forfeit their interests in the timeshares by way of default and then mitigate the harm that causes by protecting the owner's credit. (*Id.* at ¶ 39).
>
> To protect its customers' credit, Pandora would allegedly manipulate its customers' credit score by making false claims that those customers were victims of identity theft. (*Id.* at ¶ 44). This involved directing employees to file false police reports. (*Id.* at ¶¶ 45-46). On at least one occasion, a Pandora employee allegedly forged a customer's signature on a police report, using a photocopy of that customer's driver's license as a reference. (*Id.* at ¶ 51). The Bluegreen Complaint alleges that Pandora "[did] not disclose to the Bluegreen owners the consequences of ceasing payments, or that their 'cancellation' or 'exit' will actually result in an unlawful breach of their timeshare contract due to non-payment, leading to a termination of their timeshare interests." (*Id.* at ¶ 54). Bluegreen alleges that after Pandora's customers unknowingly default on their timeshare agreements, Pandora tells them that Pandora succeeded in "cancelling" or "exiting" the contract. (*Id.* at ¶ 55). For that reason, the Bluegreen Complaint alleges that the Pandora's cancellation services are "illusory" and a "scam[]." (*Id.* at ¶ 57).

*Wilson v. C.V. Starr & Co.*, No. 2:25-CV-00455, 2025 WL 2396507 at *2–3 (E.D. Pa. Aug. 15, 2025) (Weilheimer, J.) (alteration and omission in original) (footnotes omitted). This Court previously dismissed the Complaints made by Plaintiff without

4

prejudice to allow Plaintiff to obtain counsel and refile.[5] Plaintiff filed an amended Complaint on September 4, 2025. (Dkt. #37). Plaintiff's Amended Complaint asserts causes of actions for: (I) breach of contract; (II) violation of the covenant of good faith and fair dealing/bad faith; (III) fraud (international misrepresentation); (IV) consumer fraud; (V) detrimental reliance (promissory estoppel); and (VI) unlawful conversion or unjust enrichment. (*Id.* at 10–18). This Court now considers Defendant's Motion seeking dismissal of the entire Complaint.

### III. Legal Standard

Federal Rule of Civil procedure 12(b)(6) permits this Court to dismiss individual claims, or an entire complaint, if Plaintiff fails to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation omitted). This Court must then "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

A formulaic recitation of the elements of a claim will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a pleader must "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn

---

[5] As expressed in the previous decision, the Court hesitated in granting Plaintiff leave to amend. *See id.* The Court will dismiss the current Amended Complaint with prejudice in part because of the reasons specified in the previous opinion.

that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation omitted). Conclusory statements and unfounded speculation are insufficient to state a claim. *Parker v. Pennstar Bank, NBT*, 436 F. App'x 124, 127 (3d Cir. 2011).

California law controls here as the Policy was "sold and issued out of the State of California." (*See* Dkt. #37 at 13). Whether an insurance contract provides coverage is a question of law that this Court will address. *See Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) ("[I]nterpretation of an insurance policy is a question of law."). Regarding a Policy's exclusion of coverage, the insurer (Defendant) bears the burden of proving the exclusion applies. *ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 138 (2000). Exclusionary language must be "plain, clear and conspicuous." *Id.* Where a policy's language creates more than one "*reasonable* construction," the court should favor the one that provides coverage to the insured. *Id.* (emphasis added). However, if an exclusion is unambiguous "it will prevail over the insuring clause and preclude coverage." *Id.* If this Court determines the Policy does not provide coverage, the Court may grant dismissal of the claims. *See Cove Partners, LLC v. XL Specialty Ins. Co.*, 2016 WL 461918 (C.D. Cal. Feb. 2, 2016), *aff'd*, 692 F. App'x 466 (9th Cir. 2017).

## IV. Analysis

As an initial matter, Defendant has consented to dismissal of the consumer fraud (Count 4), promissory estoppel (Count 5), and unjust enrichment (Count 6)

claims. (*See* Dkt. #42 at 22).[6] What remains are Plaintiff's claims of breach of contract (Count 1), bad faith (Count 2), fraud/intentional misrepresentation (Count 3), and unlawful conversion (Count 6). The balance of the claims shall also be dismissed as the Court finds that the Policy's "Pending and Prior Litigation" exclusion barred coverage for the *Bluegreen* lawsuit.

### a. Denying Coverage Was Proper Under the Policy's Prior Litigation Exclusion

The Policy, described *supra*, barred coverage for any "[l]oss in connection with any Claim alleging, arising from, based upon or attributable to, **as of [October 13, 2020]**, any pending or prior . . . litigation . . . including any Claim alleging or derived from the same or essentially the same facts, or the same or related Wrongful Acts as alleged in such pending or prior litigation." (Dkt. #37, Ex. A, at § 4(e)) (emphasis added).  It is clear the Policy bars coverage for litigation that occurred or was pending prior to the policy period (the *Wyndham* and the *Diamond Resorts* lawsuits)—this is not in dispute. However, Defendant argues that the Policy also does not provide coverage for the *Bluegreen* lawsuit because it "arises from and is based upon the same facts as those alleged in the *Wyndham* and *Diamond Resorts* Lawsuits." (Dkt. #40 at 9). This Court agrees.

California courts have interpreted the terms "based upon" and "arising from" broadly, requiring only a "slight connection or incidental relationship between the prior litigation and the excluded claim." *Gen. Ins. Co. of Am. v. Hall*, 657 F. Supp. 3d

---

[6] Plaintiff separately requests some of these claims be dismissed without prejudice. For the reasons discussed, *infra*, the Court decline's Plaintiff's request.

1302, 1309 (C.D. Cal. 2023) (quoting *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 127 n.4 (1996)); *see also Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017) (California courts . . . have consistently given a broad interpretation to the clause 'arising from' in an insurance contract. . . . [C]ourts also give the clause 'based upon' the same broad reading."). When determining the extent of the connection between cases, this Court must look to the underlying facts and conduct in the cases, rather than the legal theories attached to the allegations. *Id.*

After reviewing the *Wyndham*, *Diamond Resorts*, and the *Bluegreen* lawsuits, this Court finds the factual allegations are not only closely related, but go beyond the "slight connection" or "incidental relationship" required under California law.[7] This determination is reached despite the fact that the prior cases were brought by separate plaintiffs. The caselaw makes clear that it is the relationship of the underlying factual allegations across the distinct cases that matters—not necessarily the parties involved in those cases. *See, e.g., Caitlin Specialty Ins. Co. v. Nat'l Union Fire Ins. Co.*, 2015 WL 12791423 (C.D. Cal. Sept. 30, 2015) (holding that a prior litigation clause applied despite differences in the claims alleged); *Realcomp II, Ltd.*

---

[7] This Court will not belabor the extensive facts shared by the *Wyndham*, *Diamond Resorts*, and *Bluegreen* lawsuits. Suffice to say Defendant has demonstrated that there are sufficient facts shared amongst the three lawsuits including, but not limited to, Pandora's and Plaintiff's false and misleading statements to clients regarding the nature of the services provided and the potential liability involved in breaching timeshare contracts. (*See* Dkt. #40 at 11–15). To the extent Plaintiff believes the standard is different, (*See* Dkt. #42 at 18) this Court would still find there are "same or *similar* facts or circumstances" shared by the three lawsuits and come to the same conclusion. Additionally, as pointed out by Defendant in its Motion, Plaintiff has previously admitted on record during a hearing before this Court that the underlying actions were similar. (*See* Dkt. #40 at 15); *See also* Transcript of July 22, 2025 Hearing at 41:23.

8

*v. Ace Am. Ins. Co.*, 46 F. Supp. 3d 736 (E.D. Mich. 2014) (holding that a prior litigation clause applied where different plaintiffs were "merely making alternative claims for their own damages based on the same set of facts."); *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309 (11th Cir. 2008) ("The 'prior litigation' exclusion does not require that the parties, claims, or theories of recovery in each suit be identical—only that the suits be 'in any way related to' each other."). Having found that the *Wyndham*, *Diamond Resorts*, and *Bluegreen* lawsuits are sufficiently similar, this Court finds that the prior litigation exclusion does apply and thus coverage for the *Bluegreen* lawsuit is barred.

### b. Plaintiff's Claim for Fraud/Intentional Misrepresentation Fails for Lack of Justifiable Reliance

Plaintiff's claims of unjustifiable reliance shall be dismissed as he failed to establish justifiable reliance—a required element for claims of fraud and intentional misrepresentation under both Pennsylvania and California law. *See Yakubov v. GEICO Gen. Ins. Co.*, No. CIV.A. 11-3082, 2011 WL 5075080 (E.D. Pa. Oct. 24, 2011) (Rufe, J.); Rattagan v. Uber Tech., Inc., 553 P.3d 1213, 1232 (Cal. 2004). Plaintiff's Amended Complaint makes some allegations that "Defendant made affirmative statements . . . to provide professional defense coverage . . . via the terms of the said policy of insurance and in various letters and communications as hereinbefore identified," (Dkt. #37 at ¶ 59) but under California law, in an insurance context, insureds cannot claim to have relied on representations "to the extent written documents contradicted" the statements made. *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 4616796 at *3 (S.D. Cal. Aug. 1, 2008).

The relationship between an insured and insurer is governed by the four corners of the written insurance policy. Accordingly, the representations made during an insurer's claim handling process cannot be relied upon for "issues such as liability, damages, coverage or even procedure, [as] claims . . . are inherently and unavoidably arm's length and adversarial." *Smith v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 508445 at *4 (E.D. Pa. Feb. 16, 2012), *aff'd*, 506 F. App'x 113 (3d Cir. 2012) (quoting *Zappile v. Amex Assur. Co.*, 928 A.2d 251, 256 (Pa. Super. Ct. 2007)). In short, since the Parties in this case have a written insurance agreement, the relationship was governed solely by the terms of that agreement—not by extrinsic statements. Hence, Plaintiff cannot establish any justifiable reliance outside the terms of the agreement.

### c. Plaintiff's Unlawful Conversion Claims and Supplemental Arguments

Plaintiff's unlawful conversion claims and supplemental arguments also fall flat. Regarding Plaintiff's Unlawful Conversion claim, this Court has already determined that the parties' relationship is governed by the Policy. The Court has further determined that Plaintiff was not legally entitled to payment under the Policy terms. Therefore, the claim for unlawful conversion shall also be dismissed.

This Court notes as an ancillary matter, Plaintiff failed to timely respond to the instant Motion. (*See* Dkt. #41). Rather than granting dismissal on that basis alone, the Court provided the Plaintiff with additional time to file a response. Plaintiff then submitted three filings, including the initial response and two "supplements" to the response. (*See* Dkt. #42–43). These filings totaled twenty-nine pages of substantive argument, which exceeding this Court's already generous twenty-five-

10

page limit. Judge Weilheimer's Guidelines § (X)(A). The Court's Guidelines are not a recommendation, and failure to adhere to them has negative consequences. As a result of Plaintiff's disregard for the deadlines *and* page limits as outlined by this Court's Guidelines, any arguments made beyond the twenty-fifth page (effectively the entire second supplemental filing submitted by Plaintiff) have not been considered in the Court's final determination.[8]

---

[8] This Court will, however, take the opportunity to write solely for the benefit of the parties that Plaintiff's reliance on *Church Mut. Ins. Co. v. U.S. Liab. Ins. Co.* is misguided. The issue in *Church* was whether an insurance contract provided coverage against allegations of fraud. *See* 347 F. Supp. 2d 880, 886 (S.D. Cal. 2004). When reviewing the contract, the court took issue with how the exclusionary provisions conflicted with the terms of coverage—adopting an interpretation that favored coverage. *Id.* Specifically, the contract excluded coverage for claims "arising out of . . . or in any way involving . . . any actual or alleged breach of contract," conflicting with the contract's coverage for "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or beach of duties." *Id.* at 884–85. These provisions created two interpretations of whether fraud claims were covered if the underlying claims were in any relation to a breach of contract—a foreseeable conflict with the terms of the contract. *Id.* To resolve the contrasting provisions, the court adopted the narrower interpretation since "uncertainties and ambiguities arising out of policy language should ordinarily be resolved in favor of the insured in order to protect his *reasonable* expectation of coverage." *Id.* at 886 (quoting *HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 645 (9th Cir. 1997)).

Plaintiff insists that the "Wrongful Acts" coverage and "Prior Acts" exclusion create an ambiguity, and that this Court should find in favor of coverage based on the alleged ambiguity. (*See* Dkt. #44 at 2). This Court does not find an ambiguity created by these two clauses at issue. Importantly, the court in *Church* did not take issue with the exclusion itself, but rather the relationship between the exclusion and the "broad prefatory language" barring coverage for claims "in any way involving" breaches of contract, which would "include any claim connected in *any way* with a breach of contract, no matter how attenuated the connection." *See* 347 F. Supp. 2d at 885. The provisions at issue here do not include the same "broad prefatory language" contemplated in *Church* (specifically the phrase "connected in any way"). *See id.* In fact, this Court finds the "Prior Acts" exclusion unambiguous and further finds that the exclusion does not conflict with—and instead creates a narrow exception to—the "Wrongful Acts" coverage. Under the Policy terms, Plaintiff is entitled to coverage for wrongful acts committed in the course of rendering professional services, but not for claims "alleging or derived from the same or essentially the same facts, or the same or related Wrongful Act(s)" which began prior to the Policy's effective date. (Dkt. #37 at § 4(e)). No diverging interpretations are created by these provisions, and the Court does not find that barring coverage here would frustrate the *reasonable* expectations of the insured.

11

## V. Conclusion

For the reasons explained above, the Motion to Dismiss is granted with prejudice with respect to all Counts.

BY THE COURT:

_____
GAIL A. WEILHEIMER, J.

---

    Plaintiff's final attempt to evade a dismissal is grounded in the theory that Defendant should not be "retroactively" relieved of its "duty to defend" Plaintiff in the *Bluegreen* action. (*See* Dkt. #44 at 3–4). To champion this questionable proposition, Plaintiff cites to one piece of authority—a footnote in an unpublished Southern District of California opinion denying a motion to disqualify counsel. While the Court questions whether Plaintiff's assertion even stands for what he purports, the authority presented is certainly not the kind that the Court finds persuasive.